# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JEROME WALLACE | : |
|    Plaintiff | : |
| v | :  Civil Rights Action No. WMN-06-227 |
| TEFFERA GETACHEW, M.D[1]., *et al.* | : |
|    Defendants | : |

o0o

## MEMORANDUM

Pending in this civil rights action is Defendants' Motion to Dismiss or for Summary Judgment.  Paper No. 9.  Plaintiff has filed an Opposition to the motion.  Paper No. 14.  Upon review of the papers filed, this court finds a hearing in this matter unnecessary.  *See* Local Rule 105.6.  For the reasons that follow, Defendants' motion, construed as a Motion for Summary Judgment, shall be denied.

Background

Plaintiff alleges that in October, 2005,[2] he fell and injured his hand.  Paper No. 1 at p. 4. He claims that despite the fact that three x-rays confirmed that his hand was broken, he was required to wait for over two months before he was sent to the University of Maryland Hospital, where his hand was placed in a cast.  *Id*.  Plaintiff states that the delay in providing him proper treatment for his hand caused him unnecessary pain.  He seeks damages of $5,000 for each day he was required to wait.  *Id*.

Defendants allege that on October 7, 2005, Plaintiff was evaluated by Mary Browne,

---

[1] Defendants indicate that Teffera Getachew's proper name is Getachew Teffera.  The Clerk shall be directed to amend the docket in this case to reflect that correction.

[2] Plaintiff's injury occurred on October 7, 2005.  Paper No. 14 at p. 6.

R.N. after he reported that he fallen and hit the back of his hand on the floor when he tried to break his fall. Paper No. 9 at Ex. A, p. 2. Upon examination, Nurse Browne noted Plaintiff's hand was swollen, and was painful to move. *Id*. at Ex. B, p. 1. She also noted, however, that Plaintiff was able to move his hand freely and that there was no discoloration to the area.[3] *Id*. As treatment for the injury, Plaintiff was given an ice pack and Tylenol for pain, and was advised to return to the clinic as needed. *Id*. In his opposition, Plaintiff claims he was told by Nurse Browne that he would be referred to see the doctor and that a splint was placed on his hand. Paper No. 14 at p. 4. Plaintiff further claims that despite the referral, he was not seen by Dr. Teffera until November 16, 2005. *Id*. at p. 6.

Defendants claim that Plaintiff made no further complaints about the injury to his hand until November 13, 2005, when he filed a sick call slip stating that he was told he would be seen by a doctor and that the injury had worsened. Paper No. 9 at Ex. A, p. 2. The sick call slip was received on November 15, 2005. *Id*. Defendant Teffera states that when he saw Plaintiff on November 16, 2005, in the chronic care clinic he ordered an x-ray of his left wrist. *Id*. He further claims that on November 17, 2005, Plaintiff was called to sick call but did not show up for his appointment. *Id*. Plaintiff claims that he could not do anything about the delay in seeing a doctor because the normal procedure for referrals is for the doctor to schedule follow-up appointments. Paper No. 14 at p. 4. He further claims that he never refused any treatment, nor did he sign for or receive a pass to go to the Medical Unit on November 11, 2005.[4] *Id*. Plaintiff alleges, however, that he continuously complained about the pain in his hand. *Id*.

---

[3] Plaintiff disputes the allegation that he was able to move his hand freely. Paper No. 14.

[4] The November 11, 2005 date appears to be a typographical error. Presumably, Plaintiff refers to the November 17, 2005 appointment he allegedly missed.

2

An x-ray taken on November 19, 2005, revealed a comminuted fracture of the fifth metacarpal.[5]  Paper No. 9 at Ex. B, p. 3.  Upon determining that Plaintiff's hand was broken, Physician's Assistant Gachingiri evaluated Plaintiff, referred him for evaluation by Defendant Teffera, prescribed anti-inflammatory medication, and advised him to limit use of his hand until he could be seen by the doctor.  *Id.* at Ex. A, p. 3.  Plaintiff was not evaluated by Defendant Teffera until November 21, 2005.  *Id.*  At that time, Defendant Teffera splinted Plaintiff's wrist and noted that he would be sent for an orthopedic consultation and a repeat x-ray.  *Id.*  In addition, Plaintiff was prescribed Motrin for his pain.  *Id.*

A second x-ray performed on November 30, 2005, showed an oblique comminuted fracture to the entire shaft of Plaintiff's fifth metacarpal.  The bone was broken in two places. *Id.* at Ex. B, p. 8.  On December 23, 2005, Plaintiff was seen by a doctor at the University of Maryland Medical Center where it was noted that the fracture in his hand was partially healed. *Id.* at p. 7.  A half-cast splint was applied to Plaintiff's hand: he was advised to keep the splint clean and dry; to wear it at all times; and to avoid strenuous activity with his left arm.  *Id.* Plaintiff was scheduled for a follow-up x-ray in two weeks.  *Id.*

On January 14, 2006, Plaintiff submitted a sick-call slip requesting a follow-up appointment for the cast on his hand.  *Id.* at Ex. B, p. 9.  The request was received on January 17, 2006, and Defendants allege that Plaintiff was scheduled for an appointment on January 19, 2006, but he did not show up.  *Id.*  Plaintiff claims he was never placed on sick call in response to his request.  Paper No. 14 at p. 8.  Plaintiff was seen on January 26, 2006, by Physician's

---

[5] A comminuted fracture means the bones are displaced.  Paper No. 9 at Ex. A, p. 3. Metacarpal bone is "any one of five long bones . . . forming the skeleton of the metacarpus or palm." *Stedman's Medical Dictionary*, 26th Ed., p. 223.

3

Assistant Bogucki. Paper No. 9 at Ex. A, pp. 4– 5. At that time, a repeat x-ray was ordered and Plaintiff was provided with Naprosyn for his pain. *Id.* The repeat x-ray was performed on January 30, 2006, but the results could not be read because the details of the x-ray were obscured by the cast on Plaintiff's hand. *Id.* at p. 11. On February 9, 2006, Plaintiff was again examined by P.A. Bogucki who noted that Plaintiff had no tenderness with palpation of his hand and that he denied any pain or discomfort to his hand. *Id.* at p. 12– 13.

On February 17, 2006, Plaintiff was seen by Defendant Teffera in the Chronic Care Clinic for his hypertension. *Id.* at Ex. A, p. 5. Defendant Teffera noted that Plaintiff was still wearing a cast and alleges that Plaintiff did not complain about any pain in his hand at that time. *Id.* Believing that the cast had been in place long enough, Defendant Teffera removed the cast from Plaintiff's hand and ordered another orthopedic consult with a repeat x-ray. *Id.* Plaintiff alleges that removing the cast from his hand caused him to experience more pain. Paper No. 14 at p. 8. The following day, Plaintiff returned to the prison dispensary complaining that his cast had been removed and that pain medication ordered for him by the doctor was not provided to him. Paper No. 9 at Ex. B, p. 18. Upon determining that no order had been written for Plaintiff, his request for medication was denied. *Id.*

On February 20, 2006, an x-ray to Plaintiff's left hand was performed. The radiology report indicated that there was an absence of significant callous formation around the metacarpal fractures, signifying that the fractures were not healing properly. *Id.* At Ex. B, p. 19. Based on that report, Defendant Teffera ordered another orthopedic consultation at the University of Maryland. *Id.* at Ex. A, p. 6. Plaintiff was evaluated by Dr. Kim on March 17, 2006. Dr. Kim x-rayed Plaintiff's hand and concluded that the fracture was well-healed with good callous

4

formation.  *Id*. at Ex. B, p. 31.

Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence.  *Anderson*, 477 U.S. at 256.

In *Celotex*, the Supreme Court stated:

5

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324. However, "'a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that objectively, the prisoner plaintiff was suffering from a serious medical need and that subjectively, the prison staff were aware of the need for medical attention but

failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virgiinia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). "[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones* 145 F. 3d 164, 166 (4th Cir. 1998). Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is

7

not present. *Id*. at 169 (actions inconsistent with an effort to hide a serious medical condition, refute presence of doctor's subjective knowledge).

     A broken bone is a serious medical condition. *See Loe v. Armistead*, 582 F. 2d 1291, 1296 (4th Cir. 1978)("a broken arm can be an excruciating injury, and few people would freely choose to delay twenty-two hours or even eleven hours in seeking a doctor's care"). Two delays involved in the instant case require close scrutiny. The first delay occurred between the date Plaintiff first reported the injury to his hand, October 7, 2005, and the date he was seen by a doctor for the complaint, November 16, 2005. The explanation for the delay provided by Defendants is that Plaintiff did not file a request to be seen for the pain in his hand and the initial examination of his injury indicated that he was able to move his hand. Plaintiff claims he was not required to request further medical attention because the nurse who evaluated him wrote a referral for him to see the doctor[6] and applied a splint to his hand, indicating that she may have suspected a fracture. Paper No. 14 at p. 2. Plaintiff did in fact file a sick call request form regarding the pain he was experiencing in his hand and requesting a referral to see a doctor after he was not seen pursuant to the procedure he cites. Paper No. 9 at Ex. B at p. 2. Taking Plaintiff's allegations as true, this court finds that there is a genuine dispute of material fact as to the cause of the delay and the extent of Defendants' knowledge regarding the condition of his hand.[7]

---

[6] The record of the initial assessment of Plaintiff's injury does not indicate that he was referred to see the doctor; rather, he was advised to return as needed if the pain increased. Paper No. 9 at Ex. B, p.1.

[7] The parties agree that Plaintiff was regularly seen by Defendant Teffera in the chronic care clinic for his hypertension. In light of the symptoms noted regarding Plaintiff's hand, swelling and tenderness, together with his allegation that he continually complained to staff about the pain he was experiencing, there is a dispute of material fact about Defendant's knowledge of Plaintiff's pain.

The second delay at issue in this case is the time between the date an x-ray confirmed that Plaintiff's hand was broken (November 19, 2005) and the date that he was sent to see a doctor for treatment of the fracture, November 21, 2005.  Plaintiff alleges that his hand was splinted on October 7, 2005, the date it was injured.  Defendants appear to deny that allegation, and records submitted with the Motion for Summary Judgment appear to confirm that Plaintiff's hand was not splinted until November 21, 2005, two days after an x-ray showed his hand was broken.  There is a genuine dispute of material fact regarding whether Defendants refused to treat a known, serious medical condition for two days which precludes summary judgment.

Plaintiff's allegations against Defendant Medical Contractor are based solely upon vicarious liability, otherwise known as the doctrine of *respondeat superior*.  The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in Section 1983 claims. *See Nedd v. Correctional Medical Services*, Civil Action No. JFM-92-1524 (D.Md., October 22, 1992), *citing Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 990 (E.D.Va. 1991).  Thus, the Medical Contractor, Correctional Medical Systems, Inc., is entitled to be dismissed from this lawsuit.

In accordance with this Memorandum, a separate Order shall be entered dismissing Defendant Medical Contractor from this action and otherwise denying summary judgment. Plaintiff shall be granted an opportunity to request appointment of counsel to assist with further development of this case.

/s/

July 31, 2006                                   _____
Date                                            William M. Nickerson
                                                Senior United States District Judge